IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LINDA BRUBAKER,         )
     Plaintiff,         )
                    )
      v.             )     CIVIL NO. 3:12-cv-423-REP
                    )
MICHAEL J. ASTRUE,      )
     Commissioner of Social Security,  )
     Defendant.        )
                    )

## REPORT AND RECOMMENDATION

Linda Brubaker ("Plaintiff") is 62 years old and previously worked as a title

abstractor/document recorder. On October 8, 2008, Plaintiff protectively applied for Social

Security Disability ("DIB") under the Social Security Act (the "Act") with an alleged onset date

of May 31, 2008, claiming disability due to carpel tunnel syndrome, Raynaud's Disease,[1] high

blood pressure, high cholesterol, depression, arthritis, diabetes, gout and asthma. Plaintiff's

claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's requests for

DIB benefits. The Appeals Council subsequently denied Plaintiff's request for review on April

10, 2012.

Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ

erroneously assessed Plaintiff's residual functional capacity ("RFC"). (Pl.'s Mem. of Points and

Author. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-8.) She further complains that the

ALJ did not fully evaluate the opinion of Christopher Newell, M.D. (Pl.'s Mem. at 8.) Finally,

---

[1] Raynaud's Disease, also known as acrocyanosis, is a "symmetrical cyanosis of the
extremities, with persistent, uneven blue or red discoloration of the skin of the digits, wrists, and
ankles accompanied by profuse sweating and coldness of the digits." *Dorland's Illustrated
Medical Dictionary* 19, 1597 (32d ed. 2012).

Plaintiff alleges that she was not capable of performing her past relevant work. (Pl.'s Mem. at 9-11.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[2] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 7) be DENIED; that Defendant's motion for summary judgment (ECF No. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Plaintiff challenges the ALJ's RFC determination and his assessment that Plaintiff could return to her past relevant work. Therefore, Plaintiff's educational and work history, medical history, medical opinions, reported activities of daily living and the hearing testimony are summarized below.

### A. Plaintiff's Education and Work History

Plaintiff completed high school. (*See* R. at 160.) She fell 13 credits short of a four-year college degree. (R. at 29.) Plaintiff testified that she did not have any vocational training, but did obtain on-the-job training. (R. at 29.)

---

[2] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Plaintiff previously worked as a title abstractor, which she classified as a document recorder. (R. at 33-34, 162.) She testified that she had to use a computer, which was "a problem," and occasionally needed to review big, heavy record books. (R. at 49-50; *see also* R. at 146.) Plaintiff estimated at the hearing that the books weighed over 20 pounds (R. at 50); however, in a Work History Report dated January 30, 2009, she wrote that she lifted large record books and heavy document cases, which weighed 10 pounds at most (R. at 199). She indicated that she walked for four hours, stood for seven hours, sat for two hours, kneeled for one hour, crouched for one hour, grabbed big objects for four hours and reached for two hours each day. (R. at 199.) Plaintiff indicated that she left her job with J.M. Abstracts due to her medical condition and her inability to perform the work, because she could not lift heavy books. (R. at 146.) At another company where she worked as a document recorder, Plaintiff walked for two hours, stood for one hour, sat for two hours, kneeled for one hour and crouched for one hour each day. (R. at 200.) She also lifted documents, which would weigh 10 pounds at most. (R. at 200.)

Plaintiff also worked at Potomac Mortgage Corporation, where she went into homes and helped people complete their mortgage application. (R. at 34.) Plaintiff's longest position held was as a secretary, where she would walk for two hours, stand for six hours and sit for four hours a day. (R. at 156.)

Plaintiff attempted to work as a camp host in 2008 for MCH Operating, but she was unable to use the RV stairs. (R. at 31, 195.) In 2009, Plaintiff arranged drivers to transport cars to and from auctions. (R. at 32.) However, that job did not "work for" Plaintiff, because it required her to go to an office and sit behind a desk. (R. at 32.) Throughout this time, Plaintiff was collecting unemployment and actively applying for jobs, such as a title clerk. (R. at 32-33.)

3

## B.    Plaintiff's Medical Records

In August 2008, Plaintiff complained of body aches in her joints and neck.  (R. at 253.) She explained that she had had partial hand gout two weeks earlier.  (R. at 253.)  Tenderness was observed in multiple areas of Plaintiff's body.  (R. at 253.)

One month later, Plaintiff complained of pain in her left elbow.  (R. at 252.) Musculoskeletal tenderness in the joints was noted.  (R. at 252.)  Plaintiff also visited the emergency room at Mary Washington, complaining of flank pain on her right side, abdominal and back pain, as well as nausea.  (R. at 359.)  She classified her pain as sharp and stabbing.  (R. at 359.)  Plaintiff's illnesses included acid reflux, asthma, hypercholesterolemia, hypertension and hyperthyroidism.  (R. at 359.)  Plaintiff was diagnosed with a urinary tract infection, kidney stones and high blood pressure, and was sent home in stable condition.  (R. at 363, 366.)

On February 20, 2009, Plaintiff visited her physician, because she had a gout flare-up in her right big toe.  (R. at 250.)  This was her first gout flare-up in six months.  (R. at 250.)  Joint tenderness was then observed in Plaintiff.  (R. at 250.)

In January 2010, Plaintiff visited her physician stating that she had abdominal pain and admitting that she had not had a bowel movement in 10 days.  (R. at 350.)  She was diagnosed with constipation.  (R. at 351.)  Six months later, Plaintiff complained of chest pain, shortness of breath and upper arm pain.  (R. at 348-49.)  She was admitted to the emergency room for further evaluation.  (R. at 349.)  At the emergency room, Plaintiff stated that she developed chest tightening "at work" and that a friend "at work," was a paramedic, checked her vital signs.  (R. at 376.)  After medical staff performed a series of tests, Plaintiff was discharged with probable gastroesophageal reflux disease, type-two diabetes, dyslipidemia and hypertension.  (R. at 379.)

C. **The Medical Consultation Report of Christopher Newell, M.D.**

On April 18, 2009, Christopher Newell, M.D., examined Plaintiff. (R. at 283-86.) Dr. Newell recorded that Plaintiff had diabetes for two years, reported numbness and tingling in her feet along with numbness and pain in her hands, denied blurry vision, reported asthma relief with medication, had been diagnosed with carpal tunnel syndrome and Raynaud's Disease, reported a 20-year history of depression and complained of aching pain in her knees and a history of gout in her feet. (R. at 283-84.) Plaintiff indicated that she retired in 1990. (R. at 284.)

Dr. Newell noted that Plaintiff was alert and oriented with normal hearing and speech as well as a flat affect and dysphonic mood. (R. at 284.) She could move on and off the examination table without assistance and walked with a slow gait, but no assistive device. (R. at 284.) Without glasses, Plaintiff had a 20/25 vision. (R. at 284.) Plaintiff could open and close her hands. (R. at 285.) Dr. Newell found that Plaintiff had a mild decreased sensation in her index finger, thumb and feet; tenderness, crepitus and a decreased range of motion in her knees; tenderness and minimum swelling in her feet; and a slight decreased range of motion in her ankles. (R. at 285.) He diagnosed Plaintiff with mild bilateral carpal tunnel syndrome with Raynaud's Disease, hypertension, hypercholesterolemia, depression, diabetes with peripheral neuropathy, mild bilateral knee osteoarthritis, asthma and a history of gout in her feet. (R. at 285-86.)

Based on his examination, Dr. Newell opined that Plaintiff could stand and walk for two hours in an eight-hour day, sit for six hours in an eight-hour day, frequently carry 10 pounds, occasionally carry 10-20 pounds and "occasionally and possibly frequently" reach, handle, feel, grasp or finger. (R. at 286.) He further noted that Plaintiff should limit her bending, stooping

and squatting. (R. at 286.) Dr. Newell determined that Plaintiff did not need an assistive device to ambulate. (R. at 286.)

**D.      The Opinions of Non-Treating State Agency Physicians and a Nurse Practitioner**

On April 21, 2009, Luc Vinh, M.D., a non-treating state agency physician, opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for six hours during an eight-hour day and sit for six hours during an eight-hour day. (R. at 60-61.) Dr. Vinh determined that Plaintiff had mild osteoarthritis in her knee with occasional gout. (R. at 60.) On December 22, 2009, R.S. Kadian, M.D., a non-treating state agency physician, affirmed Dr. Vinh's opinion. (R. at 72-73.)

On November 2, 2010, Elsie C. Mangano, FNP, a nurse practitioner, wrote a letter describing Plaintiff's multiple medical issues that were "intensified by the stress of her multiple family issues." (R. at 347.) Plaintiff was diagnosed with Raynaud's Disease, carpal tunnel syndrome, diabetes, hypertension, chronic obstructive pulmonary disease and gout. (R. at 347.) Because these illnesses were enhanced with stress that could be created from work and home demands, Ms. Mangano opined that Plaintiff's medical situation presented "as evidence for disability." (R. at 347.)

**E.      Plaintiff's Activities of Daily Living**

On January 30, 2009, Plaintiff completed a Function Report, writing that she read, showered and ate meals daily. (R. at 185.) She did not take care of anyone else or any animals and had no problems with taking care of herself. (R. at 186.) At night, Plaintiff's restless legs and arms affected her sleep. (R. at 186.) Because she could not lift pots, Plaintiff did not prepare her meals. (R. at 187.)

Plaintiff did, however, wash the dishes three times a day. (R. at 187.) She was also able to drive herself and to leave the house alone. (R. at 188.) Plaintiff shopped for groceries for two hours once a week. (R. at 188.) She also attended church once a week. (R. at 189.) Plaintiff read daily. (R. at 189.) Plaintiff indicated that she had problems getting along with people in authority and that she would argue with her superiors. (R. at 190-91.) She was fired or laid off from J.M. Abstracts and MHC Operating, because she had been argumentative. (R. at 191.)

Plaintiff did not handle stress well and was afraid of being sick. (R. at 191.) She marked that her maladies affected her ability to lift, walk, see, climb stairs, use her hands, bend, kneel, squat, reach and get along with others. (R. at 190.) She indicated that she could walk short distances (one block), lift several pounds and pay attention for a half an hour. (R. at 190.) Plaintiff used a brace daily. (R. at 191.) Garnett Brubaker, Plaintiff's husband, also completed a Third Party Function Report that was substantially similar to Plaintiff's statements. (R. at 173-83.)

Plaintiff completed a Pain Questionnaire on January 30, 2009, in which she indicated that she had had an aching, burning pain in her back, knees, hands, arms and feet constantly since 1990. (R. at 204-05.) She wrote that moving or lifting made her pain worse. (R. at 205.) Although Plaintiff took medication to relieve her pain and indicated that the medication caused side effects, she did not list any of the side effects. (R. at 205.)

On March 15, 2010, Plaintiff completed a Daily Activities Questionnaire in which she wrote that she washed dishes daily, went to church weekly and performed some grocery shopping weekly. (R. at 228-31.) She could not carry anything heavy, could not hold cards for a long period of time and could not cook for herself. (R. at 228-29.) Plaintiff was able to take care of her personal needs and read daily. (R. at 229.) She slept four or five hours a night. (R. at

231.) Plaintiff visited family members weekly. (R. at 230.) Although Plaintiff maintained good attendance at work and a routine, she was unable to concentrate, could not travel and hurt when she typed, so she could no longer work. (R. at 232.)

## F.    Plaintiff's Testimony

Plaintiff testified that she had multiple surgeries and had been hospitalized on many occasions. (R. at 34-35.) She stated that she had problems with chronic daily pain in her right ankle, wrists and right area where her appendix was. (R. at 36-37.) Plaintiff took hydrocodone, which usually helped alleviate her ankle and left wrist pain. (R. at 37-38.) She rated her pain at a four or five out of 10 while on medication. (R. at 38.) Plaintiff took Ambien, Advil or Tylenol PM to help her sleep at night; generally, she would sleep five or six hours a night. (R. at 40.) She also napped for about an hour in the afternoon. (R. at 40.) Side effects from her medication included flushing, thrush, grogginess and fatigue. (R. at 43.)

Additionally, Plaintiff testified that she took medication for her anxiety and had pastoral counseling on a continued basis. (R. at 45.) She went to the emergency room on several occasions after having problems breathing from her asthma. (R. at 46-47.) Plaintiff stated that her vision had been blurry and her hearing was on the low side of normal. (R. at 48.) Because she had Raynaud's Disease, Plaintiff's doctors did not want to operate on her carpal tunnel syndrome. (R. at 49.)

Plaintiff could carry or lift about 2.5 pounds, stand for communion, sit and walk a couple of blocks. (R. at 38-39.) She had trouble moving from a seated to a standing position. (R. at 39.) Although she had been prescribed a cane, Plaintiff was not "fond of it because it" hurt her wrist. (R. at 39.) She could write, use the telephone, drive a few times a week to run errands, attend church weekly, socialize with friends and family, read 15-20 minutes a day and check her

email occasionally. (R. at 30, 39-42.) Plaintiff did not need any help with her personal care. (R. at 42.) She shopped, but did not prepare food, clean or babysit. (R. at 41.) Plaintiff had been a member of the Lion's Club, but quit when it became "too burdensome." (R. at 33.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on October 8, 2008, claiming disability due to carpel tunnel syndrome, Raynaud's Disease, high blood pressure, high cholesterol, depression, arthritis, diabetes, gout and asthma with an alleged onset date of May 31, 2008. (R. at 53-54.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 64, 76.) On October 13, 2010, Plaintiff had a hearing before an ALJ. (R. at 24.) On December 8, 2010, the ALJ issued a decision finding that Plaintiff was not under a disability, as defined by the Act. (R. at 9-17.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on April 10, 2012, making the ALJ's decision the final decision of the Commissioner and subject to judicial review by this Court. (*See* R. at 1-3.)

## III. QUESTIONS PRESENTED

Did the Commissioner properly assess Plaintiff's RFC?

Did the Commissioner properly determine that Plaintiff could perform her past relevant work?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and

whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

determine whether the claimant can return to her past relevant work[5] based on an assessment of the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 31, 2008, her alleged onset date. (R. at 11.) At step two, the ALJ determined that Plaintiff was severely impaired from obesity, gout, Raynaud's Disease and carpal tunnel syndrome. (R. at 11-12.) At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 12-13.)

The ALJ then determined that Plaintiff had the RFC to perform the full range of sedentary work. (R. at 13.) Plaintiff contended that she could not return to work due to her chronic daily pain and mental impairment symptoms. (R. at 14.) The ALJ summarized Plaintiff's statements, which included a list of medical maladies, including gout, arthritis, diabetes, asthma, Raynaud's Disease, high blood pressure, high cholesterol, carpal tunnel syndrome, chronic pain and mental impairment symptoms. (R. at 13.) Plaintiff alleged that those impairments limited her ability to walk, lift, squat, bend, reach, kneel, climb stairs, see, concentrate, use her hands and get along with others. (R. at 13.) Plaintiff attempted to work in 2008 and 2009 as a camp host and a dispatcher/coordinator. (R. at 13.) She also collected unemployment compensation while actively applying for jobs, but did not engage in any volunteer work. (R. at 13.)

The ALJ noted that Plaintiff rated her pain at a four or five out of 10 while on narcotic medication in her back, arms, feet, knees, right ankle, abdomen and hands. (R. at 14.) She

complained of severe asthmatic symptoms that occasionally required the use of a nebulizer or emergency treatment. (R. at 14.) While she had blurry vision, Plaintiff could still drive a car. (R. at 14.) She had been hospitalized for three days to control her blood pressure. (R. at 14.) Due to her Raynaud's Disease, Plaintiff had occasional tingling and could not obtain carpel tunnel surgery. (R. at 14.) Plaintiff had a history of psychiatric treatment for anxiety and depression. (R. at 14.)

The ALJ listed Plaintiff's side effects from her medication as flushing, thrush, grogginess and fatigue. (R. at 14.) Plaintiff had trouble sleeping through the night. (R. at 14.) She testified that she could only lift or carry a two and a half pound bag of sugar, stand to take communion, sit and walk no more than a couple of blocks. (R. at 14.) However, Plaintiff stated that she had trouble rising from a seated position and was prescribed a cane, but did not use the cane because it hurt her wrists. (R. at 14.) Plaintiff could write, use a phone, drive a car and occasionally check email. (R. at 14.) She had been advised to wear sunglasses, avoid sugars and anxiety-causing activities and stop using a keyboard. (R. at 14.)

Plaintiff testified that she could take care of her personal needs, wash dishes, drive, shop for groceries, read for 15-20 minutes every day, attend church weekly and socialize with her friends and family. (R. at 14.) She performed light household activities. (R. at 14.) The ALJ determined that Plaintiff's statements as to her symptoms were not credible. (R. at 14.)

The ALJ next summarized Plaintiff's medical records. (R. at 14-15.) She was treated for her chronic conditions and, in 2005, Plaintiff's asthma was stable. (R. at 14.) Plaintiff was prescribed wrist splints for her carpal tunnel syndrome. (R. at 15.) Although she was evaluated for pain, tests revealed no irregularities. (R. at 15.) The ALJ characterized Plaintiff's treatment as conservative. (R. at 15.)

Plaintiff visited Dr. Newell for a consultative examination. (R. at 15.) Dr. Newell opined that she could perform a reduced range of light work with postural and manipulative limitations. (R. at 15.) The ALJ assigned Dr. Newell's opinion some weight, because it was not fully consistent with the evidence in the record or with Plaintiff's stated abilities. (R. at 15.) Similarly, the ALJ assigned the opinions of the non-treating state agency physicians that Plaintiff could perform a full range of light work limited weight, because those opinions were not consistent with the evidence in the record or with Plaintiff's "somewhat credible testimony." (R. at 15-16.) Finally, the ALJ assigned little weight to the opinion of a nurse practitioner that Plaintiff's condition was exacerbated by stress and that she should be evaluated for disability, because it was not from an acceptable medical source, it was not consistent with the evidence and the decision of whether Plaintiff was disabled rested with the Commissioner. (R. at 16.)

At step four, the ALJ assessed that Plaintiff was capable of performing her past work as a title clerk/document recorder. (R. at 16.) Despite Plaintiff's statements that she lifted no more than 10 pounds and stood for six hours in an eight-hour work day, the ALJ referred to the Dictionary of Occupational Titles and noted that a title examiner required only sedentary exertion. (R. at 16.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from May 31, 2008. (R. at 16.)

Plaintiff asserts that the ALJ erroneously assessed Plaintiff's RFC. (Pl.'s Mem. at 3-8.) Continuing, she complains that the ALJ did not fully adopt the opinion of Dr. Newell. (Pl.'s Mem. at 8.) Finally, Plaintiff alleges that she was not capable of performing her past relevant work. (Pl.'s Mem. at 9-11.) Conversely, Defendant argues that the ALJ's classification of Plaintiff's RFC was supported by substantial evidence. (Def.'s Mot. for Summ. J. and Brief in

Supp. Thereof ("Def.'s Mem.") at 9-13.) Defendant also explains that the ALJ properly assessed that Plaintiff could perform her past relevant work. (Def.'s Mem. at 14.)

## A.  Substantial evidence supported the ALJ's assessment that Plaintiff had the RFC to perform the full range of sedentary work.

First, Plaintiff relies on SSR 96-8p in arguing that the ALJ improperly assessed her RFC. (Pl.'s Mem. at 3-4.) Essentially, she complains that the ALJ failed to set forth a function-by-function assessment of her abilities, as required in SSR 96-8p. (Pl's Mem. at 3.) Plaintiff is incorrect — a narrative discussion of the record is sufficient. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (noting that SSR 96-8p merely suggests a function-by-function analysis, because an ALJ not conducting such an analysis could result in overlooking evidence).

Plaintiff then relies on *Lane-Rauth v. Apfel*, 437 F. Supp. 2d 63 (D.D.C. 2006), in complaining that the ALJ failed to set forth a narrative discussion of Plaintiff's RFC, as required in SSR 96-8p and discussed in *Lane-Rauth*, 437 F. Supp. 2d at 67. (Pl.'s Mem. at 6-7.) In his decision, the ALJ summarized Plaintiff's medical history and statements. (R. at 13-16.) The ALJ noted that Plaintiff contended that she could not return to work due to her chronic daily pain and mental impairment symptoms. (R. at 14.) Despite such contention, Plaintiff attempted to work in 2008 and 2009 and also collected unemployment compensation and actively applied for jobs. (R. at 13.)

Unlike in *Lane-Rauth*, the ALJ here created a narrative by including the objective evidence and explaining why Plaintiff's statements as to her symptoms were not credible. (R. at 13-15.) More specifically, the ALJ noted that Plaintiff's asthma was stable, Plaintiff's pain

evaluations revealed no irregularities and, despite Plaintiff's statements that she had blurry vision, she could still drive a car. (R. at 14-15.) This narrative discussion was sufficient to support the ALJ's decision, because a function-by-function analysis is not required by the regulations. Knox v. Astrue, 327 Fed. Appx. 652, 657 (7th Cir. 2009).

Next, Plaintiff argues that the ALJ's RFC did not reflect the fact that he found that Plaintiff was severely impaired from obesity, gout, Raynaud's Disease and carpal tunnel syndrome. (Pl.'s Mem. at 7-8.) She argues that, because the ALJ found that Plaintiff's carpal tunnel syndrome and Reynaud's were severe impairments, the ALJ should have included limitations related to those impairments. (Pl.'s Mem. at 7-8.) Moreover, she complains that the ALJ failed to properly evaluate Dr. Newell's opinion.

Dr. Newell found that Plaintiff had a mild decreased sensation in her index finger, thumb and feet; tenderness, crepitus and a decreased range of motion in her knees; tenderness and minimum swelling in her feet; and a slight decreased range of motion in her ankles. (R. at 285.) Based on his examination, Dr. Newell opined that Plaintiff could stand and walk for two hours in an eight-hour day, sit for six hours in an eight-hour day, frequently carry 10 pounds, occasionally carry 10-20 pounds and "occasionally and possibly frequently" reach, handle, feel, grasp or finger. (R. at 286.) He also felt that Plaintiff should limit her bending, stooping and squatting. (R. at 286.)

The ALJ assigned Dr. Newell's opinion some weight, because it was not fully consistent with the evidence in the record or with Plaintiff's stated abilities. (R. at 15.) The majority of Plaintiff's medical records referenced Plaintiff's gout and musculoskeletal pain. (*See* R. at 250, 252-53, 350, 359.) She testified that she could write, use the telephone, attend church weekly, socialize with friends and family, read 15-20 minutes a day and check her email occasionally.

(R. at 30, 39-42.) Plaintiff indicated that she washed dishes daily and was able to take care of her personal needs. (R. at 228-31.) Despite her blurry vision, Plaintiff could drive a few times a week to run errands and performed some grocery shopping. (R. at 38-40, 228-31.)

Although he assessed that Plaintiff had some severe medical conditions, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work. (R. at 11-13.) This determination was based on Dr. Newell's opinion, which indicated that Plaintiff could perform a reduced range of light work with postural and manipulative limitations. (*See* R. at 15.) While Plaintiff complains that the ALJ failed to include any limitation based upon the Plaintiff's ability to bend, stoop, squat, reach, handle, finger and grasp (Pl.'s Mem. at 8), the reality is that Dr. Newell's opinion as to those limitations included words such as "should" and "possibly frequently." (R. at 286.) Essentially, his opinion as to those limitations was uncertain. Additionally, the ALJ did not fully adopt Dr. Newell's opinion, but rather assigned it only "some weight." (R. at 15.) Thus, substantial evidence supported the ALJ's assessment that Plaintiff had the RFC to perform the full range of sedentary work.

**B.      Substantial evidence supported a finding that Plaintiff could return to her past relevant work.**

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is still on Plaintiff at step four to prove that she is unable to perform her past relevant work. Plaintiff must "show an inability to return to [her] previous work (*i.e.,* occupation), and not simply to [her] specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)). Further, the Commissioner may rely on the general job categories of the

*Dictionary of Occupational Titles* ("DOT") as presumptively descriptive of a claimant's prior work. *Id.*

First, Plaintiff argues that the ALJ failed to properly address Plaintiff's hand impairments which, according to her, should have limited her ability to perform sedentary work. (Pl.'s Mem. at 9.) As discussed above, the ALJ properly addressed Plaintiff's impairments and properly assessed her RFC. However, as explained below, even if Plaintiff had any limitations with regard to her hands, such limitations are inconsequential based on her ability to perform her past relevant work.

Plaintiff previously worked as a title abstractor, which she classified as a document recorder. (R. at 33-34, 162.) She testified that she had to use a computer, which was "a problem," and occasionally needed to review big, heavy record books. (R. at 49-50; *see also* R. at 146.) Plaintiff estimated at the hearing that the books weighed over 20 pounds (R. at 50); however, in a Work History Report dated January 30, 2009, she wrote that she lifted large record books and heavy document cases, which weighed 10 pounds at most (R. at 199). Plaintiff indicated that she walked for four hours, stood for seven hours, sat for two hours, kneeled for one hour, crouched for one hour, grabbed big objects for four hours and reached for two hours each day. (R. at 199.)

The ALJ determined that Plaintiff was capable of performing this past relevant work, which could be classified as a title examiner. (R. at 16.) Under the DOT, a title examiner searches public records and examines records to determine ownership of properties. *Dictionary of Occupational Titles*, Title Examiner (4th ed. 1991), *available at* 119 WL 647028. The strength requirement for this position is sedentary work with the ability to occasionally exert up to 10 pounds. *Id.* A title examiner needs only a low degree of aptitude ability for finger and

manual dexterity, and does not need an ability to climb, balance, stoop, kneel, crouch or crawl. *Id.* She would frequently be required to reach or handle and only occasionally finger. *Id.*

Plaintiff's past relevant work contained limitations similar to Dr. Newell's opinion to which the ALJ assigned some weight. Dr. Newell indicated that Plaintiff could stand and walk for two hours in an eight-hour day, sit for six hours in an eight-hour day, frequently carry 10 pounds, occasionally carry 10-20 pounds and "occasionally and possibly frequently" reach, handle, feel, grasp or finger. (R. at 286.) He also felt that Plaintiff should limit her bending, stooping and squatting. (R. at 286.) Because substantial evidence in the record supported the ALJ's assessment of Plaintiff's RFC and the ALJ's determination that Plaintiff could perform her past relevant work, the ALJ did not err in finding that Plaintiff was not disabled under the Act.

## VI. CONCLUSION

For the reasons set forth herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 7) be DENIED; that Defendant's motion for summary judgment (ECF No. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to Plaintiff and all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure**

shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: November 21, 2012